**54**

Demetrios DAGOUNAKIS, Libellant,

v.

THE SANTA MADRE and St. John Shipping & Trading Corporation, Respondents.

No. 7935.

United States District Court
E. D. Virginia,
Norfolk Division.

Sept. 21, 1959.

Bangel, Bangel & Bangel, Stanley Bangel, Portsmouth, Va., for libellant.

Jett, Sykes & Coupland, Roy L. Sykes, Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

This action in admiralty was filed by the libellant on February 28, 1958, at which time the S.S. Santa Madre was attached within the jurisdiction of this Court. Thereupon it appears from the file that Mr. Anninos, representing the libellant, was given a satisfactory letter of undertaking by Mr. Henry E. Howell, Jr., in behalf of the respondents, and the attachment was released pursuant to a letter written by counsel for the libellant.

On March 11, 1958, the respondents filed a motion to dismiss the proceeding and also their answer; the motion to dismiss being grounded on the fact that the Court had no jurisdiction. Treating that motion to dismiss more properly as a motion to decline jurisdiction, the Court heard the matter at a later date and denied the motion. A claim was filed on March 20, 1958, by the master of the Santa Madre. The matter came before the Court at a pretrial conference on December 22, 1958, at which time the record indicates that Mr. Anninos and Mr. Sykes were present. The motion to dismiss or motion to decline jurisdiction was scheduled for hearing on February 20, 1959, and the case was set for trial on its merits on June 25, 1959.

By order dated February 25, 1959, the motion to decline jurisdiction was overruled. From the evidence taken today, which is pursuant to a verbal motion, I assume, of the libellant, to enter a decree pursuant to a settlement agreed upon by counsel, there are indications that initially there was some discussion between Mr. Anninos and Mr. Howell, then of the firm of Jett, Sykes and Howell, that the case could perhaps be settled for as low as $4,500 or $5,000. These negotiations were as far back as March of 1958, and apparently an offer to settle the case for either $4,500 or $5,000 was renewed in November of 1958.

According to the letter from Mr. Anninos to Mr. Howell, under date of November 4, 1958, it was understood that the offer to settle for $5,000 would remain open only for a few days. While

this offer was not withdrawn by letter, the evidence indicates that Mr. Howell was notified that the offer had been withdrawn as no action was taken thereon; the only action taken being a letter from Mr. Howell to John C. Monroe, Incorporated, under date of November 19, 1958, which is Respondent's Exhibit No. 1, which states that there had been an agreement to settle the case of $4,500 conditioned that the offer be accepted by the end of the then current week.

According to the evidence, nothing was heard until the latter part of January or the early part of February, at which time Mr. Sykes stated that he received from his principals two checks, one in the sum of $4,500 for the case in controversy and the other in the sum of $750 for another case.

Mr. Anninos accepted the $750 for the other case, but stated that his offer of $4,500 was no longer effective as to the present case.

The matter, as indicated, was set for trial on its merits on June 25, 1959. As the trial date approached, counsel for the parties again proceeded to discuss settlement, and it is not disputed that at least counsel agreed on both sides to recommend a figure of $7,000 as a settlement of this case, plus costs, which were to be paid by the respondents. To that extent, there is no controversy. The question is whether or not a settlement was effected; that is, whether there was a meeting of the minds between the parties on June 18, 1959, or June 17, 1959, or thereafter. The correspondence indicates that there had been a meeting of the minds between the parties. Counsel are not responsible for the complications involved in connection with what should be paid by the owner and what should be paid by the so-called Club or underwriters.

Counsel for a libellant are required, of course, to deal with counsel for the respondents and they can go no further. The letters, which were addressed by Mr. Anninos to counsel representing the respondents, rather clearly indicate that throughout the entire course of negotiations there had been a meeting of the minds between the parties. These letters, according to Mr. Sykes, were answered verbally. At no time, however, was any written answer given. Furthermore, while Mr. Sykes contends that it is of little or no consequence that a settlement was not effected, but a check in the sum of $4,500 was mailed to him during the latter part of January or the first part of February, the deductible amount, which would be affected by this proceeding, could not, as this court sees it, affect the liability of the Club underwriters. If the owner was liable to the extent of $500, which apparently was the deductible amount under the P. and I. policy, I think it follows that if the Club underwriters or John C. Monroe, Incorporated, saw fit to send a check for $4,500 to Norfolk to settle this case, it is some indication that at least the owner had consented to the $500.

Now, there may be a controversy between the John C. Monroe, Incorporated, and the owner, and John C. Monroe may see fit to hold the owner for the $2,500 additional that the owner would have to put up to consummate a settlement of $7,000 but as to this controversy the libellant is not chargeable with the same, nor is his counsel. That is a matter between the parties, that is, John C. Monroe, Incorporated, and the St. John Shipping and Trading Corporation as owners and/or bareboat charterers of the particular vessel, but it has nothing whatsoever to do with the rights of the libellant and his counsel to see that a settlement is negotiated.

When they refer to settlement, I am speaking of—was there an agreement to settle the case, not the settlement which thereafter came up during the latter part of August and the early part of September, which refers to the actual settlement or the transfer of the funds.

Under the circumstances, I think that the libellant has clearly established by the fair preponderance of the evidence that there was a meeting of the minds between the parties on or about June 17, 1959, to settle this case for $7,000. I do

not say that Mr. Sykes is in any way responsible. His client, the John C. Monroe, Incorporated, apparently wanted this case settled for $4,500 and obviously had some difficulty with the owners with respect to putting up the $500 initially. Then John C. Monroe, Incorporated, saw fit to put the owners on notice to the effect that if the case was settled for anything over $4,500, the owners would have to pay but that should not, in any way, as I see it, affect the rights of the libellant.

■ There were settlement negotiations in good faith. The case was settled. The respondents have failed to pay. With respect to the question of interest, the Court is mindful of the fact that some of these cases do require some time to consummate the transaction. Interest will be allowed at the rate of six per cent per annum from July 17, 1959, until paid.

I will ask Mr. Anninos to prepare a decree in accordance with these findings of fact and conclusions of law, which will be adopted by the Court in lieu of any specific findings.